JS 44C/SDNY
REV.
10/01/2020

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| CONNIE JOANN BAKER, INDIVIDUALLY, ON BEHALF OF THE DECEDENT ' S CHILDREN, D.J.B AND SHAYLA DANIELLE BAKER, AND ON | NATIONAL FOOTBALL LEAGUE INC./ENTERPRISES (NFL) |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER | ATTORNEYS (IF KNOWN) |
|---|---|
| Connie Baker, Pro Se | |
| 451 Oakford Dr. Baton Rouge, Louisiana 70815 | |
| 225-266-7920 | |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE) (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This Court has subject matter jurisdiction over Plaintiffs ' claims under 28 U.S.C. §1332. Wrongful death/ Survial Action Personal injury

Has this action, case, or proceeding, or one essentially the same previously filed in SDNY at any time? No ☐ Yes ☒    Judge Previously Assigned

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☐ Yes ☐ If yes, give date _____ & Case No. _____

Is this an international arbitration case?    No ☒    Yes ☐

*(PLACE AN [x] IN ONE BOX ONLY)*    NATURE OF SUIT

### TORTS

### ACTIONS UNDER STATUTES

| CONTRACT | PERSONAL INJURY | PERSONAL INJURY/ | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 367 HEALTHCARE/ PHARMACEUTICAL PERSONAL INJURY/PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | [ ] 422 APPEAL 28 USC 158 | [ ] 375 FALSE CLAIMS |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | | | [ ] 376 QUI TAM |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 140 NEGOTIABLE INSTRUMENT | | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 690 OTHER | | [ ] 410 ANTITRUST |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | | PROPERTY RIGHTS | [ ] 430 BANKS & BANKING |
| | [ ] 340 MARINE | | | [ ] 820 COPYRIGHTS | [ ] 450 COMMERCE |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | PERSONAL PROPERTY | | [ ] 830 PATENT | [ ] 460 DEPORTATION |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | [ ] 370 OTHER FRAUD | | [ ] 880 DEFEND TRADE SECRETS ACT | [ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 371 TRUTH IN LENDING | | [ ] 835 PATENT-ABBREVIATED NEW DRUG APPLICATION | [ ] 480 CONSUMER CREDIT |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS | [x] 360 OTHER PERSONAL INJURY | | | [ ] 840 TRADEMARK | [ ] 485 TELEPHONE CONSUMER PROTECTION ACT |
| | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | LABOR | SOCIAL SECURITY | |
| [ ] 160 STOCKHOLDERS SUITS | | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 861 HIA (1395ff) | |
| [ ] 190 OTHER CONTRACT | | | | [ ] 862 BLACK LUNG (923) | [ ] 490 CABLE/SATELLITE TV |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | PRISONER PETITIONS | [ ] 720 LABOR/MGMT RELATIONS | [ ] 863 DIWC/DIWW (405(g)) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| | | [ ] 463 ALIEN DETAINEE | [ ] 740 RAILWAY LABOR ACT | [ ] 864 SSID TITLE XVI | |
| [ ] 196 FRANCHISE | | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | [ ] 751 FAMILY MEDICAL LEAVE ACT (FMLA) | [ ] 865 RSI (405(g)) | [ ] 890 OTHER STATUTORY ACTIONS |
| | ACTIONS UNDER STATUTES | [ ] 530 HABEAS CORPUS | | FEDERAL TAX SUITS | [ ] 891 AGRICULTURAL ACTS |
| | | [ ] 535 DEATH PENALTY | [ ] 790 OTHER LABOR LITIGATION | [ ] 870 TAXES (U.S. Plaintiff or Defendant) | [ ] 893 ENVIRONMENTAL MATTERS |
| | CIVIL RIGHTS | [ ] 540 MANDAMUS & OTHER | [ ] 791 EMPL RET INC SECURITY ACT (ERISA) | [ ] 871 IRS-THIRD PARTY 26 USC 7609 | [ ] 895 FREEDOM OF INFORMATION ACT |
| REAL PROPERTY | [ ] 440 OTHER CIVIL RIGHTS (Non-Prisoner) | | | | [ ] 896 ARBITRATION |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | | IMMIGRATION | | [ ] 899 ADMINISTRATIVE PROCEDURE ACT/REVIEW OR APPEAL OF AGENCY DECISION |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | PRISONER CIVIL RIGHTS | [ ] 462 NATURALIZATION APPLICATION | | |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 443 HOUSING/ ACCOMMODATIONS | [ ] 550 CIVIL RIGHTS | [ ] 465 OTHER IMMIGRATION ACTIONS | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 240 TORTS TO LAND | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 555 PRISON CONDITION | | | |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 560 CIVIL DETAINEE CONDITIONS OF CONFINEMENT | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 448 EDUCATION | | | | |

*Check if demanded in complaint:*

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y. AS DEFINED BY LOCAL RULE FOR DIVISION OF BUSINESS 13?
IF SO, STATE:

DEMAND $ _____ OTHER _____    JUDGE _____ DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☒ YES ☐ NO

NOTE: You must also submit at the time of filing the Statement of Relatedness form (Form IH-32).

*(PLACE AN x IN ONE BOX ONLY)* **ORIGIN**

| | | | | | | |
|---|---|---|---|---|---|---|
| [x] 1 Original Proceeding | [ ] 2 Removed from State Court | [ ] 3 Remanded from Appellate Court | [ ] 4 Reinstated or Reopened | [ ] 5 Transferred from (Specify District) | [ ] 6 Multidistrict Litigation (Transferred) | [ ] 7 Appeal to District Judge from Magistrate Judge |

[ ] a. **all parties represented**

[ ] b. **At least one party is pro se.**

[ ] 8 Multidistrict Litigation (Direct File)

*(PLACE AN x IN ONE BOX ONLY)* **BASIS OF JURISDICTION**    ***IF DIVERSITY, INDICATE CITIZENSHIP BELOW.***

[ ] 1 U.S. PLAINTIFF    [ ] 2 U.S. DEFENDANT    [ ] 3 FEDERAL QUESTION (U.S. NOT A PARTY)    [x] 4 DIVERSITY

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF | DEF | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1 | [x] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3 | [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5 | [ ] 5 |
| CITIZEN OF ANOTHER STATE | [x] 2 | [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4 | [x] 4 | FOREIGN NATION | [ ] 6 | [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Connie Baker
451 Oakford Dr.
Baton Rouge, Louisiana 70815
East Baton Rouge Parish/County

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

National Football League Inc./Enterprises (NFL)
345 Park Avenue  New York, NY 10154
New York County

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

## COURTHOUSE ASSIGNMENT

I hereby certify that this case should be assigned to the courthouse indicated below pursuant to Local Rule for Division of Business 18, 20 or 21.

Check one:  THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [ ] MANHATTAN

DATE  2/5/2021    SIGNATURE OF ATTORNEY OF RECORD    ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
RECEIPT #    Pro se Litigant    [ ] YES (DATE ADMITTED Mo. _____ Yr. _____)
Connie Baker    Attorney Bar Code #
8468A957341047F

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

Ruby J. Krajick, Clerk of Court by _____ Deputy Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

Clear Form    Save    Print

DocuSign Envelope ID: 6B591842-894D-4B25-BF11-3845AEF58355

**UNITED STATES DISTRICT COURT**            Civil Action: _____
**SOUTHERN DISTRICT OF NEW YORK**

**CONNIE JOANN BAKER, INDIVIDUALLY, ON**
**BEHALF OF THE DECEDENT'S CHILDREN, D.J.B**
**AND SHAYLA DANIELLE BAKER, AND ON**
**BEHALF OF THE ESTATE OF DONNELL K. BAKER**      Judge: _____

**VERSUS**                                   **JURY TRIAL REQUESTED**

**NATIONAL FOOTBALL LEAGUE INC./ENTERPRISES (NFL)**

                                             Magistrate: _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

Plaintiff, **Connie Joann Baker**, individually, on behalf of the decedent's children, **D.J.B**
and **Shayla Danielle Baker**, and on behalf of the Estate of Donnell K. Baker, brings this
Complaint against **Defendants** and who alleges as follows:

## NATURE OF ACTION

**Plaintiffs** bring this Complaint and Demand for Jury Trial against **Defendant**,
**National Football League Inc./Enterprises ("NFL")** to obtain redress for **Donnell Baker**,
who was injured, incapacitated, and died as a result of **Defendant's** reckless disregard for his
personal health and safety as a professional athlete for the above-named **Defendant**. **Plaintiffs**
alleges as follows:

## PARTIES

1. **Plaintiffs** bring this action, individually and on behalf of the Estate of Donnell Baker
(*hereinafter referred to as "**Estate**"*). **Plaintiff Connie Baker** (*hereinafter referred to as "**Mrs.
Baker**"*) is a resident of the State of Louisiana, and **Donnell** was domiciled in the State of

Louisiana when he died. Donnell's children are residents and are domiciled in Louisiana (*hereinafter referred to as "**Heirs**"*).

2.   The **Defendant**, **National Football League Inc./Enterprises (***hereinafter referred to as* "**NFL**"**),** is an incorporated professional United States football League with its principal place of business located 345 Park Avenue  New York, NY 10154. Defendant **NFL** conducts business throughout this District, the State of New York, and the United States.

## JURISDICTION AND VENUE

3.   This Court has subject matter jurisdiction over **Plaintiffs'** claims under 28 U.S.C. §1332.

4.   This Court has personal jurisdiction over **Defendant** as **Defendant** conduct significant business in this District, including establishing consumer and business contracts here and because the unlawful conduct alleged in the Complaint occurred in, was directed at, and/or emanated in this District.

5.   Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to **Plaintiffs'** claims occurred in this district.

## FACTUAL ALLEGATIONS

### Defendants Had A Duty To Protect Mr. Baker

6.   The National Football League (hereinafter known as "**NFL**") is the main professional football league in the United States. It consists of thirty-two teams, split evenly between the American Football Conference (hereinafter known as "**AFC**") and the National Football Conference (hereinafter known as "**NFC**"). Both the Los Angeles Rams and the Carolina Panthers are members of the NFC.

7.  The **NFL** is by far the premier sporting organization in the United States and brings in billions of dollars in revenue each year. This revenue comes directly and indirectly from the literal blood, sweat and tears of its players. It's an extremely physical game which includes almost constant tackling, body, and head shots. Due to the very nature of the game, it would be assumed that the **NFL** and its respective Conferences would do everything in its power to ensure the safety and well-being of its players. However, it is clear that the **NFL** and its Conferences have not protected their players to the best of their ability.

8.  **Mr. Baker** trusted the authority and guidelines used by the Defendants to protect his health and well-being by treating and preventing head-related injuries including the terminal effects of those injuries later in life.

9.  The **NFL** was all in a much better position than **Mr. Baker** to recognize and mitigate the risks of concussions and head trauma while playing football. However, they failed to do so.

## Studies Establish The Dangers Associated With Concussions And Head Trauma In Sports, Including Football

10. CTE is a neurodegenerative brain disorder which is caused by repetitive trauma to the head, most commonly seen in athletes. The first description of CTE was in 1928 by Dr. Harrison Martland while he was observing a group of boxers. He termed the symptoms of CTE as "punch drunk syndrome." Researchers over the next 75 years found CTE symptoms in boxers and brain trauma victims but less than 50 confirmed cases were reported during that span of time. In 2005, Dr. Bennet Omalu studied the brain of former Pittsburgh Steeler Mike Webster and subsequently published the first evidence of CTE in an American football player. Symptoms of CTE are not uniform and present themselves in differing degrees of severity and over varying lengths of time. Some of the most common symptoms include: memory loss; confusion; changes in personality; erratic behavior such as aggression, depression and suicidal

thoughts, problems with paying attention and difficulty with balance and motor skills. Many of which, **Mr. Baker** did present signs of prior to his death.

11. CTE found in football players was not researched extensively until the 2000s. However, the problem of CTE in athletes that played in high-impact sports was clearly known maybe decades beforehand. The NFL, however, was making excuses for concussions and head trauma in their sport as far back as 1994 – the same year that **Mr. Baker** began his NFL career.

12. In 1994, the Commissioner of the **NFL**, Paul Tagliabue, created the Mild Traumatic Brain Injury committee and appointed Dr. Elliott Pellman as the chair of the committee – even though Dr. Pellman was not highly versed in brain science. Dr. Pellman was even cited as saying in an interview with the magazine *Sports Illustrated*, "concussions are part of the profession, an occupational risk." This negligent indifference to concussions/head trauma in the sport were not confined solely to the weak Mild Traumatic Brain Injury committee; it was a belief that Commissioner Tagliabue himself held and impressed upon the profession.

13. In late 1994, the Commissioner stated, "On concussions, I think is one of these pack journalism issues, frankly… There is no increase in concussions, the number is relatively small… The problem is a journalist issue." In 1997, The American Academy of Neurology updated their guidelines and suggested that any football player that received a concussion during game play should be removed from the field if the player lost consciousness or had any concussion symptoms 15 minutes after the injury occurred. In the same report, the Academy stated, "Repeated concussions can cause cumulative brain injury in an individual over months or years."

14. In 1999, the NFL Retirement Board ruled that Mike Webster, a former Pittsburgh Steelers and Kansas City Chiefs player, was permanently disabled from repeated concussions. Mr. Webster's attorney stated, "It's pretty devastating evidence," he said. "If the NFL takes the position that they didn't know or weren't armed with evidence that concussions can cause total disability — permanent disability, permanent brain injury — in 1999, that evidence trumps anything they say." However, this ruling was kept secret until it was uncovered by journalists. When Mr. Webster died in 2002, Dr. Bennet Omalu examined his brain and discovered the first definitive evidence of CTE in football players. Irresponsibly and astonishingly, in 2004, the NFL's Mild Traumatic Brain Injury (MTBI) committee attempted to downplay the severity of concussions in players – even going as far as stating, "players who ultimately play in the **NFL** are probably less susceptible to MTBI and prolonged post-concussion syndrome than the general population." Over the next several years, numerous former **NFL** players committed suicide including Andre Waters and Terry Long.

15. Dr. Omalu studied both of their brains postmortem and discovered CTE. This evidence, however, was not enough for the **NFL** to take action to protect its number one asset: its players. In fact, the **NFL** tried to downplay the risk as much as possible; for example, even after a report from the University of Michigan's Institute for Social Research (which was commissioned by the **NFL**) linked dementia, Alzheimer's, and other memory loss related diseases to retired football players at a rate of 19 times the national average. It was not until the end of 2009 that the **NFL** finally acknowledged that concussions actually did pose long-term effects for players when spokesman Greg Aiello stated in an interview with *The New York Times*, "It's quite obvious from the medical research that's been done that concussions can lead to long-term problems," This gross negligence is inexcusable.

**NFL Breached Its Duty To Donnell Baker By Failing To Take Research Seriously And Failing To Implement Adequate Concussion Management Guidelines**

16. While playing football as a wide receiver for the Carolina Panthers, **Mr. Baker** suffered concussions as well as numerous sub-concussive hits to the head while practicing and during game play. During the time that **Mr. Baker** was an active player in the **NFL**, the **League** did not meet the duty of care required of it by protecting its employees, including **Mr. Baker**, from extreme harm. In fact, it can be argued that the **NFL** actually did more to ensure that its players, including **Mr. Baker**, were kept in harm's way by downplaying the risk associated with the game as well as failing to thoroughly pay attention to the research and the growing evidence that concussions and head trauma were causing unnecessary risk to its players/employees.

17. It wasn't until 2009-2010 that the **NFL** began to have adequate guidelines and policies in place to address concussions and how teams should respond. Unfortunately for **Mr. Baker**, this change in tone was over 13 years after he played his final **NFL** game and was already adversely affected and suffering life threatening terminal illnesses as a result.

**Facts Specific To Donnell Baker**

18. Donnell Baker played professional football for the **NFL** from 1994 to 1998 and as a player for the Carolina Panthers from April 1996 to December 1996, the Los Angeles Rams (*formerly St. Louis Rams*) from December 1996 to September 1998, and the Jacksonville Jaguars from September 1997 to October 1997. During his career, **Mr. Baker** participated in dozens of football games, practices, and scrimmages. While playing football in the **NFL**, **Mr. Baker** was knocked unconscious, and suffered numerous concussions. He was also subjected to countless sub-concussive hits as part of routine practice and game play. Unfortunately, the **NFL** failed to provide appropriate medical treatment for these incidents.

19. Since the earliest days of the **NFL**, through at least 2010, there were no adequate or substantial concussion management protocols or policies in place to address and treat concussions sustained by **Mr. Baker** (and others) during practice and in games.

20. Later in life, **Mr. Baker's** mental and physical health began to decline. He began suffering symptoms of depression, mood swings, and seizures. **Mr. Baker** underwent multiple emergency room visits as a result.

21. Eventually this pushed **Mr. Baker** to seek out treatment from a neurologist, with whom he had several appointments. Upon information and belief, it was from these appointments that it was discovered that the seizures **Mr. Baker** suffered from were caused from concussions and head trauma he had endured during his time as a professional football player.

### Mr. Baker's Injury

22. Upon information and belief, sometime during **Mr. Baker's** professional career, he began exhibiting signs of declining cognitive abilities. Subsequently, **Mr. Baker** was diagnosed with seizures which were caused from repeated hits to the head from his time playing professional football. Consequently, these seizures were life changing for **Mr. Baker.** After his **NFL** career ended, **Mr. Baker** became a network manager for a technology company which required him to frequently drive to fulfill the requirements of his job. However, the seizures that **Mr. Baker** would experience would affect him to the point where he would be required to not drive for weeks and months at a time. This clearly had a huge effect on his well being and the ability for him to lead a normal life and provide for his family.

23. **Mr. Baker** would also go through periods where he exhibited symptoms of depression and mood swings. Moreover, despite the fact that **Mr. Baker** adamantly attempted to live a

healthy lifestyle, the injuries he sustained from his time playing professional football made this effort futile.

24. Specifically, **Mr. Baker** would regularly go to the gym and workout with his wife. In fact, the morning he died, after dropping off his son at school, **Mr. Baker** was supposed to meet his wife at the gym during their normal time for a workout. However, **Mr. Baker** never dropped his son off at school nor did he ever arrive at the gym.

25. At some point, **Mrs. Baker** began to inquire as to **Mr. Baker's** delayed arrival. Consequently, **Mr. Baker** never arrived. It was later discovered that **Mr. Baker** had died in his sleep that morning as a result of a seizure, while his son was still asleep in the adjacent bedroom.

26. **Mr. Baker** would regularly have both documented and undocumented seizures in his sleep and after several emergency phone calls to 911, **Mrs. Baker** was advised that there was nothing that the medical providers could do and that she would need to let the seizure run its course.

27. Unfortunately, on February 5, 2020, **Mr. Baker's** seizure, in running its course, would prove to be fatal as it resulted in his death.

## CAUSE OF ACTION
## NEGLIGENCE - WRONGFUL DEATH

28. **Plaintiffs** incorporate by reference the foregoing allegations.

29. From its inception and by virtue of its role in American football, the **NFL** has historically assumed a duty to protect the health and safety of all its employees/players, including **Mr. Baker**. The **NFL** also assumed a duty of care by voluntarily taking steps to protect and promote the health and safety of its players, including promulgating safety

handbooks and regulations. That duty included an obligation to supervise, regulate, and monitor the rules of its teams, and provide appropriate and up-to-date guidance and regulations to minimize the risk of injury to its players.

30. The duties of the **NFL** included an obligation to supervise, regulate, and monitor the rules of the League and provide appropriate and up-to-date guidance and regulations to minimize the risk of long-term and short-term brain damage to **NFL** football players, including **Mr. Baker**.

31. The **NFL** had a duty to educate each team's football players on the proper protocol to evaluate and treat TBI during football games and practices, including repetitive concussive and sub-concussive injury. The **NFL's** duties further included a duty to warn its players of the dangers of concussive and sub-concussive injuries and of the risks associated with football before, during, and after they played professional football, and as additional information came to light.

32. The **NFL** had a duty not to conceal material information from professional football players, including **Mr. Baker**.

33. The **NFL** breached its duties owed to **Mr. Baker** by failing to implement, promulgate, or require appropriate and up-to-date guidelines regarding the evaluation and treatment of TBIs on the playing field, in the locker room, and in the weeks and months after they sustained TBIs, as well as providing treatment for the latent effects of TBIs. These failings included, but are not limited to:

    a)    failure to recognize and monitor concussive and subconcussive injury during football practices and games;

    b)    failure to properly inform players of the dangers of concussive and sub-concussive injuries;

c)      failure to implement adequate policies and guidelines for players who sustained concussive and/or sub-concussive injuries and/or were suspected of sustaining such injuries;

d)      failure to implement procedures to adequately monitor the health of players after they sustained (or were suspected of sustaining) concussive and/or subconcussive injuries;

e)      failure to provide adequate notification, warning and treatment for latent neuro-cognitive and neurobehavioral effects of concussive and sub-concussive injuries, after the players left the **NFL**.

34. Further, the **NFL** breached its duties to players by failing to disclose and/or failing to recognize and/or being willfully non-observant of information regarding long term effects of repetitive head trauma; the dangers of concussive and sub-concussive injuries; proper ways to evaluate, treat and avoid concussive and sub-concussive injuries to players. The data and information was available, yet the **NFL**, its physicians, and the members of the Mild Traumatic Brain Injury committee decided to overlook, downplay, and flat out deny any report or information which shed light on the real and devastating effects that concussions had on people – including their own players.

35. **Mr. Baker** experienced repetitive concussive and sub-concussive impacts during his football career, which significantly increased his risk of developing neurodegenerative disorders and diseases.

36. The repetitive head accelerations and hits to which **Mr. Baker** was exposed presented risks of latent and long-term debilitating chronic illnesses. Absent the **NFL's** negligence and concealment, the risk of harm to **Mr. Baker** would have been materially decreased. Thus, as a direct and proximate result of the **NFL's** negligence, **Mr. Baker** sustained serious injuries and death.

37. As a result of their negligence, the **NFL** is liable to **Plaintiffs** for the full measure of damages and other relief allowed under applicable law.

## <u>NEGLIGENCE - SURVIVAL ACTION</u>

38. **Plaintiffs** incorporate by reference the foregoing allegations.

39. From its earliest days and by virtue of its role as the leading governing body in American professional football, the **NFL** has historically assumed a duty to protect the health and safety of its players, including **Mr. Baker**. The **NFL** also assumed a duty of care by voluntarily taking steps to protect and promote the health and safety of its players, including promulgating safety handbooks and regulations. That duty included an obligation to supervise, regulate, and monitor the rules of its various teams, and to provide appropriate and up-to-date guidance and regulations to minimize the risk of injury to its players.

40. The duties of the **NFL** included an obligation to supervise, regulate, and monitor the rules of the League and provide appropriate and up-to-date guidance and regulations to minimize the risk of long-term and short-term brain damage to its players, including **Mr. Baker**.

41. The **NFL** had a duty to educate players on the proper ways to evaluate and treat TBIs during football games and practices, including repetitive concussive and sub-concussive injury. The **NFL's** duties further included a duty to warn its players of the dangers of concussive and sub-concussive injuries and of the risks associated with football before, during, and after they played professional football, and as additional information came to light.

42. The **NFL** had a duty not to conceal material information from players, including **Mr. Baker**.

43. The **NFL** breached its duties owed to **Mr. Baker** by failing to implement, promulgate, or require appropriate and up-to-date guidelines regarding the evaluation and treatment of

TBIs on the playing field, in the locker room, and in the weeks and months after they sustained TBIs, as well as providing treatment for the latent effects of TBIs. These failings included, but are not limited to:

> (a) failure to recognize and monitor concussive and sub-concussive injury during football practices and games;

> (b) failure to inform players of the dangers of concussive and sub-concussive injuries;

> (c) failure to implement return to play regulations for players who sustained concussive and/or sub-concussive injuries and/or were suspected of sustaining such injuries;

> (d) failure to implement procedures to monitor the health of players after they sustained (or were suspected of sustaining) concussive and/or sub-concussive injuries;

> (e) failure to provide adequate notification, warning and treatment for latent neuro-cognitive and neuro-behavioral effects of concussive and sub-concussive injuries, including after their professional careers.

44. The **NFL** breached its duties to **Mr. Baker**, by failing to disclose and/or failing to recognize and/or being willfully non-observant of: material information regarding the long-term risks and effects of repetitive head trauma they possessed or should have possessed; the dangers of concussive and sub-concussive injuries; and the proper ways to evaluate, treat, and avoid concussive and sub-concussive trauma to football players, including **Mr. Baker**.

45. As a professional football player in the **NFL**, **Mr. Baker** relied upon the guidance, expertise, and instruction of the **NFL** in understanding risks associated with the serious and life-altering concussive and sub-concussive hits in football.

46. At all times, the **NFL** had superior knowledge of material information regarding the effect of repeated traumatic head injuries. Because such information was not readily available to players, including **Mr. Baker**, the **NFL** knew or should have known that they would act and

DocuSign Envelope ID: 6B591842-894D-4B25-BFA1-3B4EAF5E035E

rely upon its guidance, expertise, and instruction on these crucial medical issues while playing professional football and thereafter.

47. Repetitive TBIs during football practices and games have a pathological and latent effect on the brain. Repetitive concussive and sub-concussive blows to the head can significantly increase a person's risk of developing neurodegenerative disorders and diseases, including but not limited to CTE, Alzheimer's disease, and other similar cognitive-impairing conditions, especially at an early age.

48. **Mr. Baker** experienced repetitive concussive and sub-concussive impacts during his professional football career, which significantly increased his risk of developing neurodegenerative disorders and diseases The repetitive head accelerations and hits to which **Mr. Baker** was exposed presented risks of latent and long-term debilitating chronic illnesses. Absent the **NFL's** negligence and concealment, the risk of harm to **Mr. Baker** would have been materially decreased.

49. Thus, as a direct and proximate result of the **NFL's** negligence, **Mr. Baker** incurred damages in the form of permanent brain damage, emotional distress, medical costs, health care, secondary care, other out-of-pocket expenses, lost time, lost earnings, and other damages.

50. As a result of their negligence, the **NFL** is liable to **Plaintiffs** for the full measure of damages and other relief allowed under applicable law.

## BREACH OF IMPLIED CONTRACT

51. **Plaintiffs** incorporate by reference the foregoing allegations.

52. To the extent that an express written contract cannot be established between the **NFL** and **Mr. Baker**, the facts set forth support the finding of an implied contract.

53. Under the implied contract, **NFL** players, including **Mr. Baker**, agreed to be bound by **NFL** rules and regulations in exchange for their participation in League teams and games,

DocuSign Envelope ID: 6B591842-894D-4B25-BFA1-3B4FAFEF0355

including the Carolina Panthers, the St. Louis Rams, and Jacksonville Jaguars. As a condition of the implied contract, the **NFL** agreed to abide by the promises set forth in its own Agreements and Bylaws.

54. **Mr. Baker** indicated his acceptance of the contract, and further, fully performed under the contract, by participating as a player in accordance with **NFL** rules and regulations.

55. The **NFL** breached its implied contractual duties by failing to ensure **Mr. Baker** was provided with a safe environment in which to participate in football activities. The **NFL** further breached its contract by concealing and/or failing to properly educate and warn **Mr. Baker** about the symptoms and long-term risks of concussions and concussion-related traumatic injury.

56. The **NFL's** breach caused **Mr. Baker** to suffer physical injury and damages in the form of, *inter alia*, past medical expenses, other out-of-pocket expenses, lost time, lost earnings, and other damages, including death.

57. As a result of its misconduct, the **NFL** is liable to **Plaintiffs** for the full measure of damages and other relief allowed under applicable law.

## RESTITUTION
### (In the Alternative to Breach of Contract)

58. **Plaintiffs** incorporate by reference the foregoing allegations.

59. The **NFL** receives, and during **Mr. Baker**'s participation as a player in the Carolina Panthers, Jacksonville Jaguars, and St. Louis Ram's football teams received, significant revenues from the football played by its employees/players. These revenues include, but are not limited to, contractual revenues from broadcasting, merchandising agreements, and ticket sales.

60. The **NFL** appreciates and has knowledge of such benefits.

61. Under principles of equity and good conscience, the **NFL** should not be permitted to retain the profits received at the expense of **Plaintiffs**, due to its unlawful misconduct or otherwise failing to prevent such injuries as described above.

62. **Plaintiffs** seek restitution and/or disgorgement of all monies the **NFL** have unjustly received as a result of its misconduct alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, **Plaintiffs**, individually and on behalf of the Estate of Donnell K. Baker, respectfully requests that the Court enter an Order providing for the following relief:

A. Declare that **Defendants** actions, as set out above, constitute negligence and breach of contract;

B. Award all economic, monetary, actual, consequential, compensatory, and punitive damages caused by **Defendants** conduct, including without limitation damages for past medical expenses, other out of pocket expenses, lost time and interest, lost future earnings, death, and other damages;

C. Award **Plaintiffs** restitution and/or disgorgement of all monies **Defendants** have unjustly received as a result of its misconduct alleged herein;

D. Award **Plaintiffs** reasonable litigation expenses and attorneys' fees;

E. Award **Plaintiffs** pre- and post-judgment interest, to the extent allowable;

F. Enter injunctive and/or declaratory relief as is necessary to protect the interests of **Plaintiffs**; and

G. Award such any other and further relief as equity and justice may require.

*Signature page follows…*



**Connie Baker, Pro Se**
451 Oakford Dr.
Baton Rouge, Louisiana 70815
225-266-7920
**Pro Se Plaintiff**

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT

CONNIE JOANN BAKER, INDIVIDUALLY, ON                 for the   SOUTHERN DISTRICT OF NEW YORK
BEHALF OF THE DECEDENT'S CHILDREN, D.J.B
AND SHAYLA DANIELLE BAKER, AND ON
BEHALF OF THE ESTATE OF DONNELL K. BAKER )
_____
                *Plaintiff/Petitioner*                                     )
NATIONAL FOOTBALL LEAGUE INC./                           )         Civil Action No.
ENTERPRISES (NFL)                                                       )
_____  )
                *Defendant/Respondent*                                 )

### APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS
### (Short Form)

        I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

        In support of this application, I answer the following questions under penalty of perjury:

        1. *If incarcerated.* I am being held at: _____ .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name. I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

        2. *If not incarcerated.*  If I am employed, my employer's name and address are:

My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per

    *(specify pay period)* _____ .

        3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | | |
|---|---|---|---|
| (a) Business, profession, or other self-employment | ☐ Yes | ☑ No | |
| (b) Rent payments, interest, or dividends | ☐ Yes | ☑ No | |
| (c) Pension, annuity, or life insurance payments | ☐ Yes | ☑ No | |
| (d) Disability, or worker's compensation payments | ☑ Yes | ☐ No | |
| (e) Gifts, or inheritances | ☑ Yes | ☐ No | |
| (f) Any other sources | ☐ Yes | ☑ No | |

        *If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

I receive $2,126 a month in disability from my previous employer. The disability is based month to month while I am under my doctor's treatment.

I also receive help from mother and father with groceries, and assistance with the utilites from my church.

DocuSign Envelope ID: 6B591842-894D-4B25-BFA1-384EAFEE035E

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4.  Amount of money that I have in cash or in a checking or savings account:  $ _____ 0.00 .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:

6.  Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:

Midland Mortgage $1,408
KIA Finance $379
Advancial Credit Union (Donnell's Jeep)$276.63 CC $110
Protection One $47.49
Entergy $142.96
Baton Rouge Water Company $57.83
Auto Insurance $236.54
Cell/internet/cable $248.55, Health ins $144.26, pharmacy $88, groceries $353

7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:

D.B-son

8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

Midland Mortgage $169,342
KIA Finance $22,125.44
Advancial Credit Union $11,890

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: _____ 02/03/2021 _____

_____
*Applicant's signature*

_____
Connie Baker
*Printed name*

**United States District Court**
**Southern District of New York**
*Pro Se Office*

# Pro Se (Nonprisoner) Consent & Registration Form to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail. Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[2]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.



**United States District Court**
**Southern District of New York**
*Pro Se Office*

## CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

New Case attached.

---

---

Baker, Connie
_____
Name (Last, First, MI)

PO Box 86928        Baton Rouge        LA            70879
_____
Address              City                State        Zip Code

504-957-3551                           jpgorham@gorhamlawfirm.com
_____
Telephone Number                       E-mail Address

2/5/2021                               s/Connie Baker
_____
Date                                   Signature

**Return completed form to:**

Pro Se Office (Room 200)
500 Pearl Street
New York, NY 10007